Good morning. May it please the court. My name is Jeff Ellis. I represent the appellant in this case, Anthony Wright. I'll take all ten minutes unless I come to a natural breaking point and I'll reserve then whatever time I have for rebuttal. The most compelling evidence against Anthony Wright was inadmissible. The most compelling evidence in the case that led to his convictions and subsequent 1,660-month sentence was not the testimony of a witness, Mr. Haynes, but the slip of the tongue of the prosecutor when he told the jury that Mr. Haynes had also heard Mr. Wright's confession. As well as the testimony of a police officer dressed up as an expert witness who essentially told the jury that Mr. Wright had committed all of the elements of the crime, specifically that he was the person who committed the murder, that he did so with intent and premeditation because he was a gang member acting in order to obtain some level of respect as payback for perceived indifference. And in fact, killing a child, which unfortunately was one of the crimes in this case, would only serve to increase his esteem within the gang community. What I'd like to focus my time on primarily this morning is the Infective Assistance of Counsel issue related to the failure to object to the prosecutor's comments in closing arguments. If I have a little bit of time, I would like to briefly address the certified, partially certified, slash uncertified issue about cumulative error because I think it presents at least an interesting procedural issue, which is what is cumulative error all about, and can a district court certify only a portion of a cumulative error? We only have 10 minutes, and my question is, what's the standard of review? We're under AEDPA, and what are we reviewing? And where was the error made with the state highest decision? Well, is the court asking about the cumulative error issue? I'm asking about our standard of review of the whole issue. We're under AEDPA, right? We are, and so the Reviewing the highest decision of the state court. Right. What was the error? Well, the error with respect to the Ineffective Assistance of Counsel issue. Excuse me, the error of the district court or anybody reviewing the highest state court decision. Okay, I apologize. I'm not quite sure what the court's question is. Then you tell me how we should review this case. Aren't we reviewing the highest decision of the state court, Washington State? Yes, you are, and you're asking It's through the AEDPA lens, so that's It's through the AEDPA lens, so I understand, and I was only trying to get some focus as to which particular claim of error the court was asking about. The Ineffective Assistance. Well, the question is whether there's an unreasonable application of clearly established United States constitutional law. And the state court decided two things. They decided that counsel's failure to object was competent, and they also decided that even if it were incompetent, that defendant wasn't prejudiced. And clearly I have to surmount the burden of showing that both of those are unreasonable applications of the United States Supreme Court constitutional standard. Because basically, didn't they say that a curative instruction was not requested, and that a curative instruction would have solved the problem, and even if you get beyond that, that there were other people that testified that your client had made admissions to other people about what had happened, so that any error would be harmless in light of the entire evidence. I think that's right. I think there are two justifications given by the state court. First is that a curative instruction would have cured the error, which I think is exactly our point. I mean, what we're arguing here is that counsel was deficient in failing to object and in failing to request that curative instruction. And the state court says if a curative instruction had been requested, one should have been given, and one potentially could have cured the error. So the question then becomes, first of all, whether we're entitled to an evidentiary hearing on our claim of ineffective assistance given that standard. Both the state court and the district court below say, well, this is within the range of competent behavior to fail to object. And I would say, first of all, that's contradicted by the state Supreme Court. But secondly- If you're having an evidentiary hearing, what facts are you going to be exploring? I think what we would be exploring is counsel's failure to object. No, I know. And the reasons for that. What facts would be before the hearing that are counsel failed to object, but that's based upon the fact that certain facts are coming out. Now, what facts are you going to go through at the hearing? Well, I think what we would go through is why counsel failed to object, because I think there's a difference of opinion as to why, and it's never been explored. I don't understand why you need a hearing to find out why counsel failed. Are you going to put the counsel on the stand and ask him why he didn't object? Yeah, and I think counsel has said two different things about that. Counsel has said, you know, I didn't want to emphasize this. I thought it could slip by without the jury paying much attention to it. You're running right into Strickland now. I mean, I thought your emphasis was on what the actual facts were. Well, my emphasis certainly is on the ultimate prejudice. And the ultimate prejudice is that what the prosecutor tells the jury is that Mr. Wright confessed to another person. Mr. Haynes is on the stand. He's asked a question. What did Mr. Wright tell you? There's an objection, and that's the end of that person's testimony. There's no cross-examination of the person. He simply leaves the stand with the question hanging in the air. What did Mr. Wright tell you? In closing argument, the prosecutor then fills in the blank, and he says, Mr. Wright told of his involvement in this crime to Mr. Haynes. Well, now, aren't we back to AEDPA? Aren't we back to what the state court found? And where is the state court having all those facts into consideration? What's the problem with the state court's decision on the facts that they used? Number one, the state court analyzes the prejudice simply as a matter of ---- And what was the problem with the facts that they relied on, and what was the law problem when they relied on those facts? But the problem is in their analysis of prejudice. The problem is the state court clearly understands that these are the facts. I'm not saying that they misconstrued the facts. So the facts that the state court used are fine? With one exception. And I'm sorry, I feel like we're butting heads, and I don't intend to do that. No, I'm not butting heads. I'm just trying to, if we're under AEDPA, I'm trying to do an analysis. I understand. The state court certainly comes to the position that defense counsel made a reasoned, tactical decision to let this go by because he didn't perceive that it was that big of a deal at the time. Is that a factual finding? It is. And so, unless it's, don't we have to give deference to it? But it is a factual finding that's simply drawn from a contradictory record. Mr. Wright asked for an evidentiary hearing when he filed his personal restraint petition. And the state court didn't give him an evidentiary hearing. Instead, they simply picked facts from his counsel when he was still acting as his counsel, which counsel himself contradicts. When counsel moves for a new trial, he doesn't say that I thought this would go by and nobody would notice. He said the comment was explicit, not of a general nature. It was devastating. It was out there lingering in the jury's mind for the balance of the trial. And in one fell swoop, the state gained all the benefit of having Haynes testify to Wright's involvement in this shooting but avoided Haynes being subject to cross-examination or jury scrutiny. So this is the same defense attorney writing in his motion for a new trial that he immediately recognized how harmful this was and how it needed to be addressed, and yet he did nothing. You always recognize the harm when you lose. But when you're in the battle, there's always contradictory facts, and lawyers always have to make a decision what to do with those contradictory facts. We're still back to Strickland. I agree, but I think that's why we need to understand when counsel understood that this was harmful, that he had some duty to object. You know, based on this, I'm not saying he necessarily had to object contemporaneously. The statements made objection, but certainly he needed to object before the jury returned, and certainly he could have objected at the first pause. So I do think that there is a factual question that has been totally unexplored through an evidentiary hearing where Mr. Wright is given the opportunity to call and cross-examine witnesses about that. Now, are you saying it was an unreasonable determination of the facts in light of the evidence presented at the state court proceeding? I'm saying there was no determination of the facts based on a full and fair hearing. What I'm going to is a much more basic question as to did Mr. Wright make a prima facie case supported by evidence in state court and request an evidentiary hearing, and the answer is he did. I'm trying to sort through this. You're saying that the error then was a failure to have a hearing. Yes. Okay. That goes back to what happened at the trial. And so the failure to have a hearing happened at the motion for a new trial? No. I'm saying the failure to hold the hearing was in response to the ineffective assistance of counsel claim raised by Mr. Wright in his pro se PRP, personal restraint petition, state habeas petition. He submitted facts in that. He asked for an evidentiary hearing. The state court didn't give him a hearing. Rather, it selected certain facts from the record and said these are the facts based on these facts. You lose. I think you told me that you agreed with the facts that the state court used. Well, I agree with the ultimate fact about what did the prosecutor say and what did the prosecutor necessarily mean when he said that. What was he talking about? But I don't agree with the issue of how counsel's performance was evaluated. And so ultimately it's my claim that the way they evaluated the prejudice was also unreasonable because what the state court simply did was ask is there other evidence in the record that Mr. Wright confessed to other people. And certainly there was. But those were witnesses who had been attacked, most significantly Ms. Garrett. And I think the state court completely unreasonably applied its reasoning by saying, well, Mr. Wright confessed to Ms. Garrett and therefore it's harmless. The point of the prosecutor's argument was that Ms. Garrett, their star witness, should be believed because the confession that she described interlocked with the confession that they didn't hear from Mr. Haynes but that the prosecutor told them about. And so I would argue that Mr. Wright on this point is entitled to an evidentiary hearing and that the state court's decision was unreasonable. All right. Thank you. May it please the Court. I'm John Sampson, Assistant Attorney General representing the respondent. Good morning. Good morning. The district court correctly denied relief in this case because the state court decision on these claims was not contrary to or an unreasonable application of the holdings of the Supreme Court. And the district court properly exercised its discretion in denying an evidentiary hearing because the claims presented by the petitioner, even if you accept the facts that he has alleged, does not show the state court decision was objectively unreasonable. And the Supreme Court in Shriver v. Landergren said the proper standard in determining whether the district court abused its discretion is whether not only can the petitioner prove a claim of ineffective assistance to counsel, but whether the petitioner's allegations would show that the state court decision was objectively unreasonable. A petitioner argues that the state court's decision was unreasonable because the state court did not hold a hearing. It's an evidentiary hearing. But this court in Lambert v. Blodgett specifically said that EDPA's deferential standards do not require the state court to hold a hearing. Your brief, you did not argue that the standing issue actually decided by the district court? Are you abandoning the standing issue? No, Your Honor. The standing issue is still relevant, and the district court's decision on that is correct because the ---- Was standing addressed by the state courts? It was not, Your Honor. It was not. What the standing issue comes into play is that there were really two conversations involved. There was the conversation between Mr. Wright and the inmate, Mr. Haynes. Right. Which was exposed. Where those were suppressed. Yes, Your Honor. And then you have Wright, then you've got Wright's then with, let's see, then what evidence Did Wright introduce any evidence that Wright's conversations with Haynes mentioned Rayna Garrett or involvement in this case? No, Your Honor. There's no evidence. And actually excerpts of record 153 to 154 is the police report which shows that Mrs. Garrett's identity was disclosed as a result of a conversation she had with her husband, Mr. Haynes, while he was ---- Okay. And those are separate conversations than the suppressed conversations. Yes, Your Honor. And now the factual determinations that were made by the state courts, what were those and how do those inform our decision here in terms of deference? The factual determination, and there are at least two, there was one by the trial judge in denying the motion for a new trial. And this is at, it's actually at Exhibit 23 of the state court record, page 1241. The trial judge found that her identity and her information about Mr. Wright's crime was not a fruit of the illegal wiretap involving Mr. Wright because she had known of Mr. Wright's involvement through conversations with him prior to the wiretap. And the court also found, which is also supported by Mrs. Garrett's testimony, that she was not made available to the police as a result of the wiretap involving Mr. Wright. Rather, she came through a separate source. And as the state court found on direct appeal, there's the inevitable discovery doctrine. Her discovery would have come about even without the first illegal wiretap. And there was also the attenuation, as they ruled in the collateral challenge, that her testimony was attenuated from the illegal wiretap challenged by Mr. Wright. So it would be your position that we're bound by those factual findings. Yes, Your Honor. But then I think Mr. Wright is also claiming that conversations with Haynes mentioned Raina Garrett, and he's trying to establish that her existence came out of those conversations that were suppressed. But what you're telling me is he never presented any evidence to that effect, so he's really stuck with the other findings by the court on how it was determined how the police found Raina Garrett. Is that right? That's my understanding of the record. And the record is that her identity came through a separate conversation between her and her husband. But even if the original wiretap initially led to them, to the police eventually discovering Ms. Garrett, there's still the sufficient attenuation, and the state court can reasonably determine that, because what the U.S. Supreme Court said in, and I'm probably mispronouncing this, which is the case cited by the state court and cited in our brief, the U.S. Supreme Court said in determining attenuation, the willingness or the free will of the live witness plays a very important role. It's very relevant to whether there's attenuation. And the more willing that witness is to come forward and to testify, the less likely that witnesses, the product of that witness's testimony, is the result of any taint from an illegal search. And in this case, Mrs. Garrett was willing to testify. She said so in her testimony at trial and in the police report. She had talked this matter over with her pastor, and her pastor was urging her to come forward. And the only reason she was hesitant to was she feared retaliation. But she eventually decided. But didn't the state courts make the determination relative to her conversations with her husband, right? Yes, Your Honor. All right. And somewhere along the lines, though, that Mr. Wright has said, well, it came between those, the intercepted, the illegally intercepted ones. But I couldn't find anywhere in the record where he introduced any evidence other than the bare allegation. And I agree, Your Honor. I can't find anything in the record where that, in the federal court record where that is true. He made the allegation in his petition for habeas before the federal court with no substantiation. We don't have any declarations. He just made that declaration that this is what happened in that conversation between Wright and Haynes? Haynes, Your Honor. Haynes. Yes, Your Honor. When, in fact, there seems to be this, another issue that the state court was looking at. So now on federal habeas, without substantiation other than the bare allegation in a habeas petition, what do we do with that? Well, Your Honor, the court has to presume correct the state court determination unless it's rebutted by clear and convincing evidence. And even if the state court's decision was proven to be erroneous, that's not enough. It has to be objectively unreasonable. So when we start with the petition for habeas in this case and go down that road, we can say, wait a minute, put that off to the side, let's see what the state court said. Yes, Your Honor. And that's what the Supreme Court said in Triero. And this court actually, in a case called Morris v. State of California, said that in order to get a hearing, evidentiary hearing, the petitioner has to do more than just present allegations. They have to present evidence showing that their allegations could be proved. So tell me your best case on what the highest court of State of Washington did so that we would say it satisfies the review on AEDPA. The best case for why there's not a need for an evidentiary hearing is the Schriero case, Your Honor. I'm talking about the best case looking at what the state court said and did. Yes, Your Honor. I'm saying, what's your best case to us? Yes, Your Honor. It's hard to choose, but I would say as far as the merits of the claim, the Cicillone case, the fact that the state court said this is a 10-year case. Okay. Now tell me what the state court did. The state court looked at the evidence before and determined that because Ms. Garrett had her knowledge about the crime before any illegal wiretap and came to the police identity through a different conversation and came willingly and assisted the police willingly, there was sufficient attenuation that if there was any violation of the wiretap statute, her testimony was attenuated. Did the state court say that? Yes, Your Honor. The state court in the personal restraint petition excerpts from record 223 to 224 and 246 specifically cited to Cicillone and said that there was sufficient attenuation. The trial judge in state court record exhibit 23 at 1241 specifically ruled that her knowledge about Mr. Wright's involvement in the crime was separate from the illegal wiretap challenged by Mr. Wright. Did the state court also make some findings in the motion for a new trial? That was exhibit 23 at 1241, Your Honor. And because you just cited the pages from the order dismissing personal restraint petition, but in the order denying the new trial there was much more detailed findings, isn't that correct? But that wasn't the final decision, though. No, Your Honor. Okay. No. The final decision on this claim that this court looks at is the state appellate court's decision, but in doing so the court does also look at the record that the state court had before it, which included the trial judge's findings. And, again, even if Mr. Wright is correct and the state court's decision was erroneous, that's not enough. Because the state court decision was objectively reasonable, he is not entitled to relief and is not entitled to an evidentiary hearing. Thank you. Thank you, Your Honor. You have 36 seconds. I'll pass. All right. Thank you. Thank you both for your argument. This matter will stand submitted. All right. Paul Norman v. United States of America, case number 0616.
judges: Ferguson, Brunetti, Callahan